IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDRA R.,[1]                                          Case No. 3:20-cv-01563-JR

        Plaintiff,                                 OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

RUSSO, Magistrate Judge:

      Plaintiff Sandra R. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## PROCEDURAL BACKGROUND

Born in March 1962, plaintiff alleges disability beginning April 1, 2015,[2] due to congestive heart failure, edema, obesity, back and memory problems, dystonia, restless leg syndrome, sleep apnea, post-traumatic stress disorder ("PTSD"), and depression. Tr. 177, 196. Her application was denied initially and upon reconsideration. On December 11, 2019, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-68. On December 27, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-23. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6. On March 8, 2023, this case was reassigned to the Judicial Officer below (doc. #19).

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity "from her amended onset date of April 1, 2015, through her date last insured of June 30, 2019." Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "lumbar degenerative disc disease; osteoarthritis; and morbid obesity." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except: "no ropes, no ladders, no scaffolds, no kneeling, no crawling; all other postural

---

[2] Plaintiff initially alleged disability as of January 31, 2015, but amended the onset date at the hearing to correspond to her earnings history. Tr. 13, 37-38, 177.

are occasional; avoid concentrated exposure to extreme heat, extreme cold, vibrations, heights, hazards, and heavy equipment; and she is limited to semi-skilled jobs not exceeding SVP 4." Tr. 20.

At step four, the ALJ determined, based on the VE's testimony, that plaintiff was capable of performing her past relevant work as a data entry clerk. Tr. 23.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to find her mental impairments severe at step two; (2) discrediting her subjective symptom statements; and (3) improperly assessing the medical opinions of Gregory Cole, Ph.D., Scott Kaper, Ph.D., and Joshua Boyd, Psy.D.[3]

## I.    Step Two Finding

Plaintiff contends the ALJ erred at step two by "failing to find [her] mental impairments (including depression and PTSD) were 'severe.'" Pl.'s Opening Br. 7 (doc. 13). At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. 20 C.F.R. § 404.1521. An impairment is severe if it significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1522.

The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). As such, any "error  at step two [is] harmless [if] step two was decided in [the

---

[3] Plaintiff additionally contends that the RFC failed to account for "evidence relevant to the effects of" her "emotional lability, including anger outbursts, irritability, and tearfulness or crying," and "stress upon her mental functioning or tiredness and low energy." Pl.'s Opening Br. 21-22 (doc. 13) (internal citations omitted). Because plaintiffs' RFC argument is premised on allegedly wrongfully rejected evidence, it is reiterative and contingent upon the other allegations of error.

claimant's] favor with regard to other ailments." *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

Here, the ALJ found that plaintiff had a number of medically determinable and severe physical impairments at step two. Tr. 15. Concerning plaintiff's depression and PTSD, the ALJ determined they were medically determinable but not severe because the "medical evidence of record is inconsistent with severe mental impairment." Tr. 17. The ALJ then went on to continue the sequential evaluation process and formulated an RFC that considered evidence and allegations pertaining to plaintiff's mental impairments. Tr. 20-23. Under well-established case law, any alleged error at step two error was harmless.[4] *See, e.g.*, *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

## II.    Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her mental impairments.[5] When a claimant has medically documented impairments that could

---

[4] This is especially true given that plaintiff does not argue that her mental impairments meet or equal a listing at step three, even when all the allegedly wrongfully rejected evidence is credited as true, nor does she maintain that the other mental impairments acknowledged by Drs. Boyd and Cole – i.e., anxiety and somatic symptom disorder – resulted in different or additional limitations. Tr. 96-97; *see generally* Pl.'s Opening Br. (doc. 13). Nevertheless, the Court agrees with plaintiff that moderate impairments are generally "sufficient to meet the 'severe impairment' standard," particularly where, as here, those limitations are essentially supported by every medical source of record. *Natasha D. v. Saul*, 2019 WL 4573487, *3 (C.D. Cal. Sept. 20, 2019) (collecting cases).

[5] Plaintiff also challenges the ALJ's rejection of her need for an assistive device, but her briefing is silent concerning her other her physical impairment testimony. Pl.'s Opening Br. 30-33 (doc. 13); *see also* Pl.'s Reply Br. 14 (doc. 17) (solely addressing the impact of Dr. Cole's opinion on her subjective symptom testimony). However, plaintiff did not actually testify to needing an assistive device at the hearing – rather, the ALJ observed that she had "a large walking stick" and asked if it was "homemade," to which plaintiff responded: "yes." Tr. 43. Thus, in his decision, the ALJ acknowledged that plaintiff "appeared at the hearing with a cane" but, consistent with the medical evidence, noted that it "is not required and was not prescribed." Tr. 20, 22. That is, plaintiff's cane use was longstanding and intermittent, and her medical providers emphasized that it was a useful tool when she was feeling dizzy or unstable. S*ee* Tr. 526-31 (during a December

reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

---

2017 physical evaluation with Mahnaz Ahmad, M.D., plaintiff reported that she "[s]ometimes uses a cane when she feels particularly unstable," but it "was not prescribed to her" and she "has not received any physical therapy or any imaging of her back"), 574 (plaintiff stating to her neurologist in December 2016 that she has "a cane which she uses 'sometimes'"); *see also* Tr. 235 (plaintiff's friend indicating in October 2017 that she had been using a cane for 15 years). Accordingly, the Court does not find reversible error in regard to this issue, especially given that the RFC limits plaintiff to a limited range of sedentary work.

Page 5 – OPINION AND ORDER

At the hearing, plaintiff testified she was unable to perform her past data entry work "because I have lack of concentration [and] a temper and I have pain and body issues that don't adjust to a workplace." Tr. 58. In expanding upon her mental limitations, plaintiff stated that, for the five years prior to "being laid off[, …] I couldn't keep things straight." Tr. 41. Plaintiff indicated that she "always had the difficulties," but that they have "progressively gotten worse" after her grandmother passed away in 2015. Tr. 51, 53. She stated further: "My emotions are not set anymore" and endorsed problems with anger, memory, and being around people. Tr. 42, 56-58. In terms of daily activities, plaintiff testified that she drives her husband to the store but does not go inside and does not complete any household chores; she spends her time sitting in her chair with the television on in the background and "go[ing] on Facebook." Tr. 48-49. She indicated that she stopped doing craft projects in June 2018 because she "lack[ed] motivation." Tr. 46-47.

After summarizing their hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. In particular, the ALJ cited to the non-severity of plaintiff's mental impairments, and her ability to drive, "shop at Winco and the Grocery Outlet," and "sit . . in her chair throughout the day" as supporting the RFC for a limited range of sedentary work. Tr. 20. Additionally, the ALJ noted that the record belied plaintiff's testimony that she lacked motivation to complete crafts. *Id.* Finally, the ALJ found that the medical record did not support plaintiff's allegations of restrictions in concentration, social functioning, and memory. Tr. 21.

The ALJ is correct that the record undermines plaintiff's statements concerning crafting. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[e]ven where [daily] activities

suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment") (citations omitted). The record reflects that, as of October 2017, plaintiff spent time daily sewing and making jewelry. Tr. 211, 231, 233. In December 2017, plaintiff reported "[s]he does [a] significant amount of crafting with her hands just jewelry making." Tr. 548. In July 2018, plaintiff continued to report crafting activities to her treating mental health provider, Dr. Cole. Tr. 604. In March 2019, she likewise reported doing "a lot of crafts." Tr. 722.

However, concerning plaintiff's ability to shop or engage appropriately with others, the ALJ mischaracterized both plaintiff's subjective symptoms statements and the record. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). Notably, at the hearing plaintiff explained that she does not go into the store and instead waits in the car while her husband shops. Although, as of October 2017, plaintiff went into stores independently a couple times per week and spent time with friends, however, there is no indication that these activities persisted after that date. Tr. 211, 231, 233.

Further, beginning in January 2019, plaintiff experienced an increase in anger issues – i.e., "she got so mad that she scared herself" – which continued through the date last insured. Tr. 655, 660. As addressed in greater detail in Section III, plaintiff's depressive symptoms are well-documented and persisted throughout the adjudication period, despite occasional symptom remission. In fact, in the year leading up to the date last insured, plaintiff began having suicidal thoughts, such that her primary care physician – John Nelson, M.D. – had her sign an anti-suicide contract in October 2019. Tr. 657, 664, 668, 721.

Turning to the ALJ's remaining rationale, "whether the alleged symptoms are consistent with the medical evidence," "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). That is, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's hearing testimony where, as here, the ALJ's other reasons for finding that testimony unreliable are not supported by substantial evidence. *See Brown v. Colvin*, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record).

In sum, the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony concerning her mental limitations. The ALJ's decision is reversed as to this issue.

## III.    Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited the opinion of Drs. Cole, Boyd, and Kaper. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[6] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or.

---

[6] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning

Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

## A.    Dr. Cole

Plaintiff initiated care with Dr. Cole in 2014, although the record before the Court does not contain any chart notes or treatment records. Tr. 444-47. In September 2017, Dr. Cole authored a letter in support of plaintiff's application for disability benefits. Tr. 447. At that time, the doctor identified plaintiff's diagnoses as: "pervasive depressive disorder, unspecified anxiety disorder, PTSD, and a chronic pain disorder (somatic symptom disorder)." *Id.* In terms of symptoms, Dr. Cole identified: "depressed mood/emotional lability, diminished motivation, anxiety symptoms/panic attacks, agitation/anger problems, financial difficulties, conflict with family and friends, pain problems exacerbated by stress, sleep difficulties, suicidal thoughts without an active plan, dealing with various losses/deaths, and flashbacks/bad dreams and hypervigilance re: [history] of sexual abuse." *Id.* He opined "[b]ehavioral progress has been intermittent and prognosis is guarded," and that plaintiff's "problems managing pain, balance problems, emotional lability, diminished frustration tolerance, and level of anxiety would be the factors which would interfere with her vocational success." *Id.*

In January 2018, Dr. Cole authored a second letter to provide a "status [of plaintiff's treatment] to social security." Tr. 532. In particular, Dr. Cole stated:

> [Plaintiff] has continued to be actively involved in therapy on a monthly basis with her last mental health counseling on 1/8/18. She continues to experience symptoms associated with all the diagnoses previously noted. Her emotional state continues

---

(i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

to be depressed, and recently she has presented as being increasingly labile with diminished motivation. Focus of therapy has been on attempting to assist the client with opening up social/avocational outlets, and she has begun engaging in avocational activities, including make jewelry. It is still not believed, however, that the client is currently competitively employable.

*Id.*

In July 2018, Dr. Cole completed a "Psychodiagnostic Evaluation." Tr. 600-04. Dr. Cole premised his assessment on a clinical interview, behavioral observations, the review of certain records, and a battery of objective tests. Tr. 600. In terms of mental health symptoms, plaintiff reported "that she has been 'feeling down off and on for years,'" with diminished energy levels, concentration, and sleep. Tr. 602. Plaintiff also reported "[s]ome feelings of hopelessness, but no suicidal ideation"; "[s]ome problems with anger"; hypervigilance and flashbacks; and anxiety "'trying to be on time, being around unfamiliar people, being in new situations, and when I'm in pain.'" Tr. 602-03. In terms of daily activities, plaintiff indicated that she engages in limited self-care (i.e., brushing her teeth twice per week and showering twice per month), and no chores or errands (except for folding laundry once every two months and shopping in stores twice per year). Tr. 604. In terms of hobbies, plaintiff remarked that she enjoys "watching YouTube, listening to music, seeing her friends once a month, and creating jewelry and journals." *Id.*

Dr. Cole observed plaintiff to be emotionally labile, with fair insight and judgment, but otherwise noted that she presented in an appropriate manner. Tr. 602. Objective testing revealed no significant deficits and "there was no evidence of poor effort or of inconsistency." Tr. 602-03. "On the Beck Depression Inventory-II, [plaintiff] received an overall score of 59, which was indicative of a severe level of self-reported depression symptomatology." Tr. 603. Based on this assessment, Dr. Cole listed plaintiff's diagnoses as "Major Depressive Disorder, Recurrent Episode-Severe; Unspecified Anxiety Disorder; [PTSD] without Dissociative Symptoms; and

Somatic Symptom Disorder, with Predominant Pain, Persistent-Severe." Tr. 604. In the "Discussion" portion of his report, Dr. Cole specified:

> It is evident that [plaintiff] could benefit from follow-up psychological services, and behavioral medication management, considering her behavioral symptomatology. Results of this evaluation indicated that [plaintiff] did not exhibit any significant problems in the areas of attention and concentration. She also was noted to have average immediate memory capability; however, her delayed memory ability was considered to be slightly below average. The client was able to sustain simple tasks, and no problems completing a simple multiple-step task were observed. From the results of this evaluation, if [plaintiff] pursues a vocational placement in the near future, then it is presumed that her: emotional lability, level of anxiety, and problems managing pain, would be the primary factors, which would impact her overall level of vocational success. In the latter area, further medical evaluation is suggested to determine [plaintiff's] specific physical limitations.

*Id.*

The ALJ did not evaluate Dr. Cole's opinions in formulating the RFC, except to note that his July 2018 "psychological consultative examination showed no problems with attention and concentration." Tr. 20-23. However, at step two, the ALJ did provide a more detailed discussion of Dr. Cole's opinions, concluding that his 2017 and 2018 treatment statements were "unpersuasive" because they were "vague," "unsupported by Dr. Cole's treatment records," and "of little use because they provide no statement of functional limitation." Tr. 17. To the extent Dr. Cole indicated plaintiff could not work, the ALJ determined this "matter [is] reserved to the Commissioner." *Id.*

Moreover, the ALJ resolved that plaintiff's "lack of problems with attention and concentration, average immediate memory, and slightly below average intellectual ability and delayed recall [as revealed via Dr. Cole's July 2018 evaluation] are consistent with . . . no more than mild limitation in the four domains of mental functioning." Tr. 17-18. In so finding, the ALJ emphasized plaintiff's "minimal and intermittent pattern of psychiatric treatment in the form of

prescribed Zoloft and Bupropion from John Nelson, M.D.," and her statement "that she, 'Stays busy during the day and maintains a large household.'" *Id.*

The ALJ's rationale for rejecting Dr. Cole's opinions is improper. Initially, the fact that plaintiff was unable to obtain (or Dr. Cole failed to produce) Dr. Cole's chart notes is not a valid reason to find his medical opinions less persuasive. This is especially true given the tone and content of the record. Significantly, Dr. Cole is plaintiff's longstanding mental health provider and the record makes clear that plaintiff sought regular counseling with him – i.e., once per month over a course of years – and also tried psychotropic medications beyond just Zoloft and Buproprion, which did not materially improve her symptoms and/or caused side-effects. *See, e.g.*, Tr. 246, 447, 462, 464, 467, 474, 478-81, 485, 532, 652, 654, 662, 668, 670.

It is equally clear from the record that Dr. Nelson was working in conjunction with Dr. Cole to treat plaintiff's mental health impairments. *Id.*; *see also* Tr. 456, 458, 466, 468, 472, 655, 657, 660, 664 (plaintiff reporting ongoing mental health symptoms to Dr. Nelson, and Dr. Nelson observing plaintiff to "irritable," "tearful," "stressed," or "crying"). In addition, Dr. Nelson regularly assessed plaintiff using the PHQ-9 scale, wherein she typically rated above 20, indicating severe depression.[7] Tr. 456, 652, 657, 660, 663-64, 668. This is consistent with Dr. Cole's July 2018 finding of severe depression, which the ALJ essentially ignored. Tr. 603-04.

---

[7] The PHQ-9 "refers to a specific patient health questionnaire that . . . is an instrument for making criteria-based diagnoses of depressive and other mental disorders commonly encountered in primary care." *Salina S. v. Kijakazi*, 2022 WL 3700880, *5 n.3 (D. Idaho Aug. 25, 2022) (citation and internal quotations and brackets omitted). "PHQ-9 scores are generally interpreted as follows: minimal depression (0-4); mild depression (5-9); moderate depression (10-14); moderately severe depression (15-19); severe depression (20-27)." *Id.* at n.4 (citation omitted). Although ALJs are not "required to universally credit PHQ-9 scores or let them drive the disability analysis," they must still "acknowledge the PHQ-9 scores and weigh them against the other evidence." *Id.* at *8 n.6. Here, the ALJ wholly ignored plaintiff's PHQ-9 scores, which were assessed by both Dr. Nelson and other provides, which further lends credence to plaintiff's allegations of error.

And, as discussed in Section III(B), the state agency consulting sources – i.e., Drs. Boyd and Kaper – both opined that plaintiff was moderately impaired in "[t]he ability to carry out detailed instructions [and] to maintain attention and concentration for extended periods," such that she should be "limited to simpler tasks as she cannot sustain more complex ones over the course of a full work day/week." Tr. 82, 101-02; *see also* Tr. 78 (Dr. Kaper denoting there is "general agreement among [plaintiff's] key providers of some cognitive deficits/difficulties managing her attention . . . what we do have on file does support limiting her to simpler tasks"); Tr. 468 (Dr. Nelson observing that plaintiff has some "obvious . . . short term memory issues"), 569 (plaintiff reporting "'foggy brain', poor memory [that] seems to be getting worse" to her neurologist in February 2017). Stated differently, Dr. Cole's July 2018 statements that plaintiff has "slightly below average" delayed memory and can "sustain simple tasks, and [showed] no problems completing a simple multiple-step task" can be read in accord with the opinions of Drs. Boyd and Kaper, and does not necessarily support the ALJ's finding that plaintiff is capable of more complex tasks. Tr. 604.

Concerning plaintiff's activities of daily living, the record reflects that plaintiff regularly engaged in craft activities during the adjudication period, but there is otherwise a dearth of evidence concerning household tasks or chores. Cf. *Treviso v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (absent specific details about claimant's childcare responsibilities, "those tasks cannot constitute 'substantial evidence'"). The evidence that does exists implies that plaintiff performed a limited range of such activities and on a sporadic basis. *See, e.g.*, Tr. 48-49, 209-10, 231-33, 604; *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability"). Thus, substantial evidence does not support the ALJ's determination that plaintiff engaged in minimal or intermittent

mental health treatment, or otherwise spent a substantial portion of her day maintaining her household.[8]

Although the ALJ is correct that Dr. Cole's 2017 and 2018 letters do not provide a functional assessment, they are not so vague as to absolve the ALJ from addressing their particularities. Indeed, Dr. Cole outlined plaintiff's diagnoses, treatment history, and symptoms that impose barriers to employment, including emotional lability, anxiety, and problems with motivation and frustration tolerance. 447, 532. As the Social Security Rulings makes clear:

> [O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5p, 1996 WL 374183, *3. The ALJ simply failed to follow this ruling, and instead relied on isolated statements at the exclusion of the numerous medical records that supported plaintiff's mental health claim. The ALJ therefore erred as to Dr. Cole.

---

[8] There is only a single chart note in the 700-plus page record that mentions plaintiff staying busy during the day or maintaining a household. *See* Tr. 553-55 (plaintiff reporting in July 2017 to her neurologist that she "stays busy during the day making jewelry and maintains a large household"). During that appointment, plaintiff's provider noted that she has a diagnosis "of PTSD and regularly follows up with a mental health professional," and had improved depressive symptoms "since trying the medical marijuana." *Id.* However, as addressed herein, the record reflects that this improvement in mental health symptoms was not sustained. *See Benton v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2071980, *4 (D. Ariz. June 9, 2022) ("[a]s the Ninth Circuit has previously discussed, the presence of waxing and waning of symptoms during the treatment period do not necessarily indicate an ability to maintain employment, nor do some symptoms improving negate a treating provider's opinion"). In other words, "[t]his sole reference does not constitute substantial evidence." *Ellefson v. Colvin*, 2016 WL 3769359, *4 n.3 (D. Or. July 14, 2016).

### B.    Drs. Kaper and Boyd

Dr. Kaper rendered his opinion in January 2018, and Dr. Boyd adopted Dr. Kaper's assessment in July 2018 shortly after Dr. Cole's "Psychodiagnostic Evaluation" was completed. As noted above, both Drs. Kaper and Boyd indicated that plaintiff had moderate impairments in regard to sustained concentration and persistence that resulted in a limitation to simple, routine, tasks. Tr. 78, 82, 97, 101-02.

The ALJ found the state agency consulting source opinions "somewhat persuasive." Tr. 18. Specifically, the ALJ resolved that "their finding of moderate limitation in concentrating, persisting, or maintaining pace is inconsistent with Dr. Cole's psychological consultative examination, which showed 'no problems with attention and concentration.'" *Id.*

As addressed herein, the medical evidence uniformly supports the presence of severe mental impairments that result in functional restrictions not reflected in the RFC. In fact. Dr. Boyd expressly reviewed Dr. Cole's assessment and nonetheless concluded that a limitation to simple tasks due to cognitive deficits was warranted. Accordingly, the ALJ committed reversible error in regard to the opinions of Drs. Boyd and Kaper. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (only mistakes that are "non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).

## IV.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the

Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed above, the ALJ committed harmful legal error by failing to properly evaluate evidence from plaintiff and Drs. Cole, Kaper, and Boyd. Further proceedings would nonetheless be useful regarding the extent of plaintiff's allegedly disabling mental impairments, such that crediting the wrongfully rejected evidence as true and/or remanding for the immediate payment of benefits is improper.

On one hand, it is undisputed that plaintiff's mental health impairments are longstanding, and have persisted at significant levels since the alleged onset date, despite regular and continuing treatment. On the other hand, plaintiff worked for many years with these same mental impairments and plaintiff's most recent psychological evaluation – i.e., Dr. Cole's July 2018 "Psychodiagnostic Evaluation" – is seemingly internally inconsistent and difficult to reconcile with Dr. Cole's earlier opinions, especially in the absence of any treatment notes. Furthermore, the record suggests that plaintiff may have engaged in a wider slate of daily activities earlier in the adjudication period. Accordingly, the record is ambiguous concerning if/when plaintiff's mental impairments became disabling.

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the ambiguity surrounding any potential

disability onset date, coupled with the complex and longstanding nature of plaintiff's mental health conditions, the use of a medical expert specializing in psychology would be helpful. Additional efforts should also be made to obtain plaintiff's mental health counseling and treatment records from Dr. Cole. Therefore, upon remand, the ALJ must seek out additional records and a consultative exam and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 23rd day of March, 2023.


/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge